Good morning. May it please the court. Before I begin, I'd just like to say to the judge from Iowa that I'm from Minnesota. And I was born there, so. Yeah. And I welcome you. Yeah, it's OK. I'd like to reserve some time at the end for rebuttal. That's where Hubert Humphrey was from, right? Yep. Huh? You know that? Yep. Am I right about that? Yes. For the opening argument by me, I would like to focus on the fact that the district court judge denied our request to reopen discovery to properly respond to the motion for summary judgment. The plaintiff in this case, Ms. Wayne, represented herself for certainly for more than a year. She filed this complaint on her own on September 3rd, 09. And if the court looks at the docket sheet, which is an exhibit in this case, she continued to file motion after motion after motion or responses that that were not allowed to be filed. There were noted discrepancies from the rules. She really didn't know what she was doing. It really is a classic case of a proper plaintiff trying to take on a major corporation and a well-established law firm. And it reassures us all, I guess, why we go to law school, because she was without a clue as to what to do. And I might say that from the time she filed it in September 3rd of 09 until – Did you represent her before? No. But look – I cannot – And she says, Joseph Stanton, that's the boss, stated in my presence that he recommended I be hired because I'm Vietnamese and he would not have to pay me as much as an American. And then in her deposition, she said – This is after, of course, after she was fired. She says – She said that Stanton told her, You are a woman, Vietnamese. You have to listen to me. Don't complain about anything. Just come to work and finish your project. Now, that's certainly, at least in my mind, direct evidence that race was a material factor, or at least a motivating factor, behind her termination. And at least there's a genuine issue of material fact. So if that happened, summary judgment's improper. Right? I agree. Okay. So that's what we're here on. That's one reason we're here. Okay. All right. There's lots of reasons. That's on the merits of the summary judgment motion, but even before we get to that, I should answer your question. I came into the case on November 5th, 2010, over a year after she filed it. And when I came into the case, there was a motion for summary judgment already having been filed by the defendants. Ms. Wayne filed no response. She was basically in a position to have the case dismissed on summary judgment without a response. I came in. I analyzed the case. And the first thing I did, after the court granted my substitution of attorney, was to request that we reopen discovery under Federal Rule Civil Procedure 56-F. And there were two declarations filed saying that there are documents and there is evidence that we need to obtain before we are able to really present an adequate response in opposition to the motion for summary judgment. Ms. Wayne conducted no depositions, served no discovery. She served one discovery request for one item, her notebooks. She did not. That was denied. That was not produced. She did not file a motion to compel. She was basically without any effort of prosecuting this lawsuit other than, and I might say, what Your Honor had just cited. She did come up with testimony regarding that. But here's the problem. I went into Judge Anello's court and I asked him to give me the first motion I filed was a memorandum, an application to continue the motion for summary judgment and reopen discovery so I could gather these facts and documents from the defendant. He denied that on the 13th of December, and he denied my request to open discovery, but he said, okay, I'll let you file a response to the summary judgment motion. And his order says that response is due on December 15th. So he gave me two days to file a response to the summary judgment motion without giving me the right, which I believe even the U.S. Supreme Court has said that I have, to obtain documents when my declaration and Ms. Wayne's declaration said we need those documents to file an adequate response. And can I ask you to address, because I expect we're going to hear from the other side on this point, the issue of, or the linked issues of exhaustion and timeliness. Oh, timeliness on the EEOC? Well, exhaustion in front of the IAC and then timeliness of filing suit, yes. Oh, okay. Well, the tolling issue. Right. Because we're going to hear from the other side on that. I'd prefer to hear your position first. My position is stated in the brief, and it's simply that she filed the DFEH complaint within a year of the last act of discrimination, which was her termination. And she also filed the, she received a right to sue from the DFEH and filed the lawsuit within a year. And then she received a right to sue from the EEOC and filed the lawsuit within 90 days. She filed the claim with the EEOC within 300 days. Our belief is she met all of the statutory requirements. But under this court's decision in 2010 in Stifel v. Bechtel Corporation, when she filed with the State Department, that's a 706 deferral agency under Title VII, so it would have automatically been cross-filed after 60 days with the EEOC. Isn't that correct? That is correct. It's a dual filing, but she can rely on the EEOC's right to sue notice, which she did. And she filed within 90 days of receipt of the EEOC right to notice. And what EEOC notice are you referring to? I am referring to the, I can refer to it by the date that she, by its date. Yeah, I'd like to know that because I want to put my nose in it in the record, would you please? Okay. I have that right here. The issue is dealt with, the issue is dealt with in the brief on page 15. And I just know that it was, okay. So she received a notice of right to sue from the EEOC commission mailed to her on 8-1409, specifically advising her under Title VII. Okay. I want to read it with you. So where is it in the ER? Let's see. Looks like it's ECR 322. 322. Okay. I've got it. And that says we cannot investigate your charge because it wasn't filed within the time limit required by law. That's the reason we can't do it. That's why the, does that give her right to sue? Well, I understand the boilerplate at the bottom says she can sue within 90 days, but sue within 90 days as to what, that you didn't, you were untimely? I don't believe it would be untimely. They said they're not going to investigate it. Because it was not filed within the time limit required by law. Well, that's what, that is what they said. But then they also said that she has 90 days to file a lawsuit in federal. Wasn't, wasn't, wasn't it the duty of the Department of Fair Employment and Housing to file with the EEOC? That's my understanding, yes. What do you mean it's your understanding? What's required. And that wasn't done. That's right. That's why. There was a screw up, right? That was a screw up, yes. Okay. And they had this work sharing agreement, but that wasn't followed. And the, on November, so she filed with the, with the Department of Fair Employment of the state, October the 8th, 2012. And, and the Department of Fair, October the 8th, excuse me, that's 2008. And then on November the 7th, the Department of Fair Employment and Housing mistakenly filed a notice of case closure without referring the case to the EEOC. That happened. That's correct. That triggers equitable tolling. And then on August the 14th, 2009, EEOC, did the EEOC send her a right to sue letter? And then that would end the equitable tolling. And I think by then she had 90 days. And then she filed her complaint with the federal district court three weeks later. That's. Have you worked all this out in a little time? Yes. Yeah, you should have that. Okay. Yeah. Did you have it? What? The, I'm sorry. You know, the chronology happened. I have the chronologies on page 15 of my brief. Yeah. It's really that. Yeah. She received a right to sue notice November 7, 2008, telling her she had one year to file civil action, which she did September 7, 2009. Okay. Got it. In U.S. District Court. And. I have it. She got a right to sue letter. An equitable stop definitely should apply in the case. The EOC sent her a right to sue letter that would end equitable tolling. And she had 90 days to file. And she filed it in the district court three weeks later. And so then her complaint would be filed as if she'd filed it on April the 28th, 2009. And after the beginning of equitable tolling. Unless her filing was timely. It was filed within that 90-day period. It's not easy to figure out. All right. All right. I'm over my time. All right. Okay. We'll see what the other side has to say. Thank you very much. Yeah. Good morning, Your Honors. May it please the Court, Melissa Click on behalf of Qualcomm, the appellee. And I'd like to talk about three items. But I'd like to skip straight to this issue of exhaustion. Let me ask you this. Am I wrong when I say that perhaps, not perhaps, but that summary judgment should not have been granted in favor of your client? Because there was a genuine issue of material fact on whether race, sex, or national origin was a factor here. Your Honor. And, you know, she said in her declaration, Stanton, he was her boss, told her that he recommended that I be hired because I'm Vietnamese and he would not have to pay me as much as an American. Well, there's some inference of racial discrimination. And then in her deposition at page 40, both of these are sworn statements, she said that Stanton told her, again, you are a woman, Vietnamese, you have to listen to me, don't complain, anything. Just come to work, finish your project. Now, doesn't that raise a material issue of fact in this case on whether there was racial discrimination? No, Your Honor. How can you say that? And here's why, Your Honor. Tell me why. A couple of reasons. One is that the first remark that was allegedly made in her interview, and we must assume for purposes of summary judgment, obviously that Mr. Stanton made these remarks, which are rude, unprofessional, crude. However, in order for Ms. Nguyen to survive summary judgment, she must produce evidence that the legitimate reason that Qualcomm has proffered her performance improvement plan was a pretext for discrimination. And these two comments do not do it under the law. And here's why. One, Mr. Stanton was the individual who hired Ms. Nguyen. And if he hired her knowing her nationality, this Court in Coghlan v. American Seafood has recognized that it is illogical to suggest that five months later he terminated her on the same prohibited basis. And this Court has held that there is a strong inference that the plaintiff must overcome in order to get past that strong inference that there's been no prohibited bias. In addition, these comments were not directed at the termination. And it is undisputed that Mr. Stanton's supervisor, Mr. Heslop, human resources, and employee relations all reviewed, discussed, and were involved in the termination decision, and there's no suggestion of bias. But isn't there — if there's an issue of fact, a material issue of fact, then you can't have summary judgment. It's not a material issue of fact because those two statements alone — Well, race was an issue that's been raised here. I mean, this is what she said that he told her, and she states this in her sworn declaration. You know, I'd be hired because I'm Vietnamese, and he would not have to pay me as much as an American. And then he got after her and told her again, you are Vietnamese. You have to listen to me. He brought her into his office. You know, closed the door, I think. Don't complain. Just come to work. Finish your project. I mean, there's race all over that. The simple presence of a racist remark or here potentially two racist remarks unrelated to the termination is insufficient to create a triable issue of material fact that her termination, which Ms. Wynn admitted that she was placed on the pick. Is it — you're telling me it doesn't raise an inference? It does not. It may raise a prima facie case of discrimination. Yes, Your Honor. Okay. So if you've got that, then you don't get summary judgment. If you have a prima facie case of discrimination, then the burden in a summary judgment employment case shifts to the defendant to present a legitimate reason. But, you know, you're talking about that factor test, how this shifts, that shifts. That doesn't work that way in the real world. And all she needs to do, and I think she's done it in these two items, is that there is an issue of whether race was a factor in terminating her. That's all. And then you have a trial and you bring all this in and see what the trier of fact does. Ms. Kleck, if, in fact, those statements can be viewed as direct evidence, then didn't the district court apply the wrong standard? Because I noticed in the summary judgment briefing, nobody cited any post-Costa decisions. Nobody talked about this being a potential mixed motive claim. And so couldn't one make a plausible argument at least that applying the McDonnell-Douglas burden shifting when there's direct evidence is not the appropriate standard for summary judgment? Your Honor, I would suggest that there's no direct evidence that there was any bias in the termination decision. The alleged statements were made during the hiring. Prior to the PIP being started and before her doing it, it was not involved in the termination. She never suggested at the time that there was any bias involved in being put on the PIP or the termination. So the fact that her supervisor made a derogatory racist remark while she was employed is simply insufficient to then support a claim for a discriminatory termination. And that puts aside this exhaustion requirement, which I think we should mete out a little bit, because if she failed to exhaust, this is a second ground upon which the court granted summary judgment. And so — Can I ask a question about that? Yes. On page 19 of your brief, you're talking about the stifle decision that I mentioned and asked Mr. Golden about. And at the first full paragraph, you say here, when failed to produce any evidence to suggest that her 208 DFEH claim alleged violations of Title VII, as such, reliance on stifle is inapplicable. Where did you present that argument to the district court? That is in our briefing to the district court, Your Honor. I didn't see it. Okay. I can — Maybe you can find it. I can certainly find that argument, because it was — Was it in your summary judgment? It was in summary judgment. Okay. I must have missed it. It was in the reply briefing. And the district court did not reach that issue, because even if you apply stifle, the district court found that she still failed to exhaust. There — this is a confusing case for exhaustion, because Ms. Winn argued below that the stifle case should apply. To this court, she did not argue stifle. And the reason is because the district court's decision, based on her argument about stifle, is rock solid. Under stifle, if you do the math, she had to file her lawsuit at the latest by August 4th, August 4th, 2009. And she didn't file it until September. And she gives no reason why on August 4th there would be any tolling. And so to this court, Ms. Winn makes a different argument. She doesn't rely on stifle. So we go back to the simple facts. She exhausted with the DFEH by obtaining a right to sue letter on November 7th, 2008. You can find that on ER 309. That letter tells Ms. Winn you have 30 days. If you want to get a right to sue letter from the EEOC, you have 30 days from November 7th, 2008 to ask them for one. Her DFEH charge does not indicate — the DFEH did not screw up. The DFEH was not required to file any claim that it gets with the EEOC. It was not an EEOC claim. She did not make a Title VII claim or an 88 claim. Well, where on the claim form does she make the — There's a box. There's a box that you can check. But it wasn't in the record, was it? No. She hasn't presented it. We don't actually have her claim form. But there's no evidence the DFEH made a mistake because if she had done that, and even if — presuming that they should have, then you apply stifle. And she missed her stifle chance. So let's just go back to what happened. Well, how do you know she didn't check the box if it's not in the record? Even if she's checked the box. If she checked the box, then we apply stifle. But if she checked the box under the 29 CFRs, they were obligated. The 706 Deferral Agency was obligated as a matter of law to cross-file it with the EEOC whether she wanted it cross-filed or not. And if they had done that, then she would have been entitled to an EEOC charge within 180 days. That takes us to May. She would have received her right to sue letter from the EEOC in May and would have had until August to file her lawsuit. She did not. So even if the EEOC should have had that claim, she would have had at the latest as the district court analyzed until August 4th. And she has given no reason that there should be tolling based on the August 4th date. But let's go back to what actually happened in this case. She received a right to sue letter from the EEOC in November 2008. It said you have 30 days if you want to get an EEOC right to sue letter. December, that passed. No reason is given as to why she didn't do that if she wanted it. It was clear as day. Let me ask you something. If she hadn't checked the box, and I've looked at the current form. There is no box, but let's assume there was a box and she failed to check it. How is it that EEOC is sending her a letter? Here's why. So she gets the letter from the DFEH. It says go to the EEOC if that's what you want to do. She does not. She waits. She waits until February 20th, 2009. She was supposed to go to them under the law in December of 2008. She waits until February 20th, 2009. If you look at ER 83, she filed a claim on February 20th, 2009. That claim was untimely. The quote-unquote right to sue letter that you were shown by Ms. Wynn's counsel at ER 322 was their response informing her it was already late. But she can't say she reasonably relied on a right to sue letter that was late because it was late in February when she went to them. She had to go to the EEOC in December, and she was told that. Clear as day in the DFEH letter. And she has given no reason other than her own failure to do so that she didn't go to the EEOC in November, December, January, until the end of February 2009. In the Irwin case, the U.S. Supreme Court has made clear that equitable tolling in these circumstances is inappropriate if the only reason given is she simply didn't do it. Excusable neglect. In that case, the person went within 29 days of their personal receipt, and the U.S. Supreme Court said, no, no, no, your attorney got it before that, and so the 30 days has passed. There's no equitable tolling because there was no reason to show that the defendant was the reason that you did it or that you had filed one elsewhere. I think I understand your argument, but help me understand the last paragraph in the letter from Mr. McCammon. I'm at ER 312. She's now filed a request for reconsideration of the EEOC denial, and he writes, when you get there, you tell me when you're there. I know exactly what you're speaking of. Okay, last paragraph. He writes, please understand that submission of a request for reconsideration does not extend the 90-day period you have to file suit in the U.S. District Court on your claim against Qualcomm. That period will continue to run. What 90-day period is she talking about? I believe that Mr. McCammon is referring to a reservation, per se, that he is going to put in every single letter that he writes when he's reconsidering something because he's not making a determination about whether there should have been or should not have been tolling back in November, December, and February. And so it's my belief he's simply informing her that if you have a valid right-to-suit letter, you – this does not change this. This will not toll. He's explicitly telling her that there is nothing that's tolling. Well, but – and now I'm on 322. This is the original denial by EEOC. Please check the box. We cannot investigate your charge because it was not filed within the time limit required by law. I got that part. But then in the part below, it says notice of suit rights. Title VII, da-da-da-da-da, tolling. This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent under federal law based on this charge in federal or state court, which has to be done within 90 days. What's he talking about? You're saying that because it was untimely as to him, she has no right to file a federal suit against Qualcomm, period, let 90 days, no 90 days, nothing. Isn't that your argument? It's not because she didn't receive this right to sue notice. It's because she didn't timely file or exhaust her first charge, and that is a separate regulation. No, I understand that. No, listen to me, and then I'll listen to you. If all the only thing I had in front of me was an X besides we can't investigate because you didn't file within the time limit required by law, I agree with your position. It seems easy. But what he takes away with one hand, he seems to be giving back with the other in this stuff at the bottom where he says, well, this is your right to sue that or you can go ahead in 90 days. Filing against Qualcomm, what's he talking about? It seems to me we've got a push-pull here. I would say what we have is a form letter that probably does not apply the law appropriately in every given circumstance. And the reason that I say that is. . . Yeah, well, that man says that. What's she supposed to know? Well, because at that point it was too late. So even if she relied on that, she could rely on that. That's fine. But she had missed her deadline back in December 2008. So whatever happened in August of 2009, frankly, is irrelevant to her suit rights. She had already missed that deadline. And she's informed about the federal deadline in the letter that she gets from the California Department of Fair Housing and Employment, the November 7th letter, 2008. So you're telling us that she's supposed to rely on what California tells is the federal law. And when it comes to the feds, the feds are wrong about federal law. No, she could rely on that right to sue letter. But it doesn't change the fact that she didn't exhaust timely. If she had relied on that and that was the reason that she didn't file suit or that was the reason that she didn't timely, then I would stand before Your Honors and say that equitable tolling would be appropriate. But at that point in time, she had already missed her deadline. So the time that she needs tolled. . . And you're saying she knows about the deadline because of the November 7th letter she got from the FEH. Right. ER 309 makes clear that she had 30 days to go to the EEOC. That's what it says. That's right. Right. And so. . . And that's the law. And the feds got the law wrong? The feds did not get. . . Well, in their form letter that they send out. . . If you'll notice, there are various boxes. Not only the form letter they sent out, but the follow-up letter from Mr. McCammon four days later. Seems to have got the law wrong again. Well, I would say that the EEOC was not making an analysis at that time about whether she had fully complied with federal law or not. What they were doing was looking at whether the EEOC would investigate her charge. They weren't looking at whether or not she had exhausted. . . That's how I would submit. And, Your Honor, there's a case in our brief where someone got a duplicate right to sue notice. And, of course, it contains the same language. It says you have 90 days. The Nelmeda case. And I cited it in the brief to show that even though the EEOC has this language on every form, just because every time it sends it out doesn't mean that all procedural prerequisites have been met. The law still requires certain timing of filing and exhaustion. And just because. . . Perhaps the EEOC shouldn't do that. I would suggest that that's not. . . . . . on the relationship between the state California agency and the EEOC. And I'm looking now actually at the Stiefel case, too, which discusses it at 1241. And the Stiefel court says we reverse the order dismissing the claim as untimely because Stiefel's DFEH charge was deemed filed with the EEOC pursuant to the work sharing agreement. Right. So it seems to me that the state agency either dropped the ball and didn't fulfill their statutory duty to cross-file it with the EEOC, or the EEOC dropped the ball. But either one or both of those agencies dropped the ball before the plaintiff did. So why can't she rely on that for equitable tolling? Because there is no evidence in this record. Ms. Wynn provided no evidence that she actually filed a claim where the EEOC and the DFEH would have jurisdiction. There is no evidence. . . Of the subsequent Title VII claim. Can't you infer from that? I mean, she filed a Title VII claim. How can you say there's no evidence that she had a Title VII claim? I mean, she filed it. Well, she passed it. It may not be a valid claim, but it's not like she wasn't alleging violation of protected class covered by Title VII. Of course she was. It's not like Bechtel doesn't have 20 or more employees. Of course they do. So where is it that you could infer that it should not have been cross-filed with the EEOC? Because the regulation states that where the DFEH and the EEOC have mutual jurisdiction. And it would be helpful if we had. . . If Ms. Wynn wanted to allege that her EEOC charge. . . She hasn't even presented to this Court this argument, by the way, that her DFEH charge should somehow be used as an EEOC charge. But there is simply no proof. Yes, she filed a year later, and maybe even four months later, she decided that she felt that Title VII had been violated. There's simply no evidence in the record, however, that there was a charge before the DFEH that should have been filed. And as I indicated earlier, even if that were the case, if they had committed the dual filing, then if you apply Stifel's reasoning, she had to file her suit in federal court using her DFEH charge and saying this really should have been an EEOC right to letter, which is essentially what you'd have to say. It would be August 4th, still a month before she filed the current lawsuit. I don't believe so because it's extended by 240 days because California is a deferral state. So she wasn't untimely. California is a . . . 706C deferral state. It's 180 days, I believe, and then 90 days. Plus the 60 days the state agency gets, so it's actually 240 days. But if they close the case, if they actually close the case, then you would run from the date that they close the case. So the case was closed on November 7th, 2008, and if you run the 180 and the 90 days, you would get to August 4th, 2009. And if you want to see the chronology, the district court actually put it together nicely in their brief. I noticed when you were asking about the chronology, on page, I believe, it is ER 12, lines 6 to 14. The district court went through the chronology there and set forth each of the tolling in its discussion because they basically used that analysis. Well, I mean, didn't the state agency, they filed their notice of closure but they failed to notify the EOC? I mean, they filed up again. Your Honor, I don't believe there's any evidence that there was a claim of mutual jurisdiction, but assuming that there was, she still only had until August 4th, 2009, to file a lawsuit. That's what the Stiefel v. Bechtel case out of this circuit essentially claimed, was that you would get that additional time. And that was the analysis that was applied by Judge Anello. What about the summary judgment? Your Honor, and I would refer the court back to the briefing on that. I do respect the court's time. However, I would refer the court back to the briefing and the fact that these two remarks, they're not. We're very generous with time. I will give you an example of a court, Your Honor. Evidence that someone made statements. Next time you're here arguing, we're going to deduct this excess. I won't come back for a while so you can forget, Your Honor. Thank you. Remarks such as you should learn to speak English or you should move back to Korea that have nothing to do with the termination are insufficient to support a national origin discrimination claim as a matter of law. There are various cases where just because someone used a racial. Well, let's say for purposes of argument that she did, that in her declaration and in the deposition, she did raise the issue, the material issue of fact, as to whether there was discrimination on the basis of her national origin, that she was Vietnamese. Let's say, take that as a given. Where does that leave you? It wasn't related to her termination. And if it's not related to her termination, it's not actionable. Say that again. It was not related to her termination or the legitimate reasons for her termination. And therefore, it's not actionable. In other words. But isn't that a question of fact? Well, there is no evidence in the record whatsoever that the termination decision has any tinge. The only evidence in the record is that her supervisor may have been crude, rude, discriminatory, racist. That's how these companies get into trouble. They get supervisors that are crude, rude, groping, and do all kinds of things they're not supposed to do. You know. And that's why we have these rules. And that's why you've got these HR people that are supposed to educate them. And that's why, in this case, Qualcomm had not only an HR person, but a human employee relations person. And his supervisor involved. You can tell all that to the trier of fact. And you'll be very effective, I'm sure. You know. You've got a good smile. That counts a lot. Yeah. Your Honor, I would just submit that if any statement that were racist could be tied to any decision whatsoever, that every time someone made a statement, there would be a trial about every single termination. That's why, if you read the cases, if you read the cases that have been written by your honors, there's more. They involved an examination of others that are similarly situated. They involved an examination of the termination process, whether the company was consistent or not. But we're talking about summary judgment. And all of those cases talk about summary judgment, Your Honor. Well, yeah. Okay. All right. Thanks. Thank you, Your Honors. All right. All right. We'll hear from the senior citizens now. Do I have a moment? Yeah, sure. There's also a claim for assault and battery. Yeah, we know that. Yeah. Okay. And my brief speaks to that. Yeah, they wanted her to sign some paper. Right. What did they want her to sign? Pardon me? What did they want her to sign? Do you know? Oh, they wanted her to sign. That's a really good question. Do you have a copy of it? No, I don't. Why? I don't have a copy of it. Oh. I don't know what it was. Let me ask you. It was something to do with her termination. Let me ask you how you get around the argument that was just made, that once she gets the letter dated November 7th from the DFEH, that she's got 30 days to go to the EEOC. She doesn't go to the EEOC within that period. EEOC says it's untimely with us, which if she had 30 days, it is untimely with us. Therefore, there's a failure to exhaust. What's your answer to that? Well, I get around it, first of all, by the DFEH is making that statement, but, in fact, the EEOC makes a different statement to her later saying, you have 90 days to file. And it's really the EEOC's case that they're talking about. So she can rely on what the EEOC said in that right-to-sue notice. Even if the EEOC is wrong? Well, I don't think the EEOC is wrong. Well, the EEOC said two things. The EEOC said you were late coming to us. Right. And then it says you've got 90 days to file a suit. Well. And I view those as somewhat inconsistent. I think they're wrong about her being late coming to them. Why are you – okay, that's a different point then. So why are they wrong? Because she took more than 30 days from November 7th to come to them. She has 300 days from the date of termination to file with the EEOC. Yeah, but the DFEH said you have 30 days or 300, whichever comes earlier. All right. Is DFEH wrong about that? I think they're wrong about that. And what's your basis for saying that? I don't think they can take a federal right she has and remember their state agency and say, hey, this is the law right now. They're basically beyond their authority in advising her of what she can do. And that's an erroneous statement of law by the DFEH? Yes. And what's your evidence for that? Why do you say that, I should say? Well, because the EEOC regulations themselves say she has 300 days from the date of the last act of discrimination, which would be the termination, which occurred in August of 2008. She files her charge with the EEOC in February of 2009. It's less than 300 days. Okay. That's the argument. I got it. Okay. All right. Mr. Golden, was the original DFEH claim cross-filed with the EEOC? Not by her. I know it wasn't by her. Okay. But wasn't the state agency obligated under their work-sharing agreement to cross-file it with the EEOC? I don't believe it was. You don't think they were? No. Okay. Well, then they went. That means it's easy. I could be wrong. I don't know what you're talking about. That's your problem. Are you at cross purposes? He said, are they obligated?  Did you hear him ask? Maybe you thought he said, did they in fact? Or did you say, no, you don't think they're obligated to cross-file? I want to make sure I understood what you said. Okay. Well, my understanding is they're obligated to cross-file. I've seen those letters. See, that's a different answer than the one you just gave. Well, then I'm retracting my first answer. You might have misunderstood the question, which is why I'm narrowing in on this. Okay. Okay. So what's your answer now? Pardon me? So what's your answer now? First ask the question to yourself and then answer it, so we know what question you're answering. Well, the question is, does the DFEH have a duty, obligation to cross-file with the EEOC? My answer is yes. Okay. Thank you. Thank you. All right. All right, this letter is also submitted.
judges: Bennett, Pregerson, Fletcher